## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| THERESA SICLARI, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Civil No. 2015-28 |
| | ) | |
| CBI ACQUISITIONS, LLC d/b/a | ) | |
| CANEEL BAY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Before the Court is the defendant CBI Acquisitions, LLC d/b/a Caneel Bay's ("Caneel")

motion for discovery and inspection [ECF 61].   Caneel seeks to have the shoes plaintiff Theresa

Siclari was wearing at the time of the incident[1] giving rise to this litigation provided to its expert,

for the purpose of inspection and "non-destructive testing."   Def.'s Mot. at 3.   Plaintiff opposes

the motion in part [ECF 64].[2]   She argues that she is entitled to know exactly what Caneel's expert

intends to do with the shoes, and that Caneel's expert, Dr. David DeLonga, who is located in

Virginia, must examine the shoes at their current location:   in the possession of Siclari's expert in

Illinois.   Pl.'s Opp'n at 2.   Moreover, Siclari asserts that any such examination must be

supervised by her expert so as to avoid any damage to this "fragile" evidence.   *Id.*

### I.        BACKGROUND

Siclari alleges that on June 9, 2013, while she was a guest at a function on Caneel's

premises, she was injured when the heel of her shoe became wedged in a "defect" in Caneel's tiled

floor, resulting in the twisting of her leg, causing injury.   Compl. at ¶¶ 7-10.   Siclari alleges the

---

[1]        Caneel also seeks production to it of the "new (unworn) exemplar shoes of the same make and model"
examined by plaintiff's expert.   Def.'s Mot. [ECF 61] at 1.

[2]        Caneel filed a reply.   [ECF 66].

*Siclari v. CBI Acquisitions, LLC*
Civil No. 2015-28
Page 2

defect in the floor resulted from Caneel's negligence.  *Id*. at 8, 10.  At the time of her injury,
plaintiff was wearing dress shoes with a 4-1/2-inch spike heel.  Pl.'s Opp'n at 3.

Plaintiff produced a report from her designated expert Peter J. Poczynok, P.E., of Illinois,
dated February 15, 2016.  *See* Ex. L to Def.'s Mot. [ECF 61-13].  Poczynok had examined the
plaintiff's shoes, as well as an unworn "exemplar" pair of the same model and make of shoes.  *Id*.
at 3-7.  Poczynok opines, using close-up photographs of the shoes to illustrate his opinions, that
the "rotated position of the left heel pad" of the shoe plaintiff was wearing is "consistent with the
heel of that shoe having been held in place and restrained from rotating" as plaintiff "attempted to
turn to the right."  The "torque …was transmitted through her left leg."  *Id*. at 11.  Plaintiff's
designated expert Peter R. Francis, Ph.D., relying in part on Poczynok's conclusions, opines that
"from a biomechanical perspective," Siclari's version of the incident is consistent with the physical
evidence.  Ex. M to Def.'s Mot [ECF 61-14] at 5-6.  Poczynok maintains custody of plaintiff's
shoes at his facility in Illinois.  Pl.'s Opp'n at 6.[3]

Caneel sought to have the shoes[4] – both plaintiff's actual shoes and the unworn exemplars
– delivered to its expert in Virginia for inspection and testing.  When plaintiff refused, the parties
"conferred,"[5] and the instant motion followed.[6]

---

[3]     Following the production of plaintiff's experts' reports, on February 24, 2016, the parties engaged in
mediation.  Although the parties executed a Mediated Settlement Agreement, they do not now agree as to whether an
actual agreement to settle was reached.  *E.g*. Pl..'s Opp'n at 3.  Caneel brought the instant motion in June, 2016.

[4]     Based on some of the email correspondence submitted, it appears the parties were discussing inspection of
the shoes late in 2015.  *E.g.,* Email from Attorney Friedberg to Attorney Quinn dated December 16, 2015 [ECF 61-
2] ("We need to discuss the shoes").

[5]     Caneel attaches to its motion several email exchanges discussing the shoes.  It is not clear to the Court that
any verbal conference between counsel aimed at resolving this issue took place.

[6]     Although she takes the position the matter was settled in mediation, on June 4, 2016, Siclari moved to modify
the scheduling order to allow for the taking of a certain deposition.  Pl.'s Mot. to Modify [ECF 59].  Caneel joined

*Siclari v. CBI Acquisitions, LLC*
Civil No. 2015-28
Page 3

## II.    LEGAL STANDARDS

Rule 26(b) of the Federal Rules of Civil Procedure provides that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."   FED. R. CIV. P. 26(b)(1).   Rule 34 governs the pretrial production of tangible materials and provides that "[a] party may serve on any other party a request within the scope of Rule 26(b): to produce and permit the requesting party or its representative to inspect, copy, test, or sample . . . any designated tangible things."   FED. R. CIV. P. 34(a)(1)(B). The request must "describe with reasonable particularity each item . . . to be inspected [and] must specify a reasonable time, place and manner for the inspection and for performing the related acts." FED. R. CIV. P. 34(b)(1)(A)-(B).   The party to whom the request is directed must respond in writing within 30 days after being served.   FED. R. CIV. P. 34(b)(2)(A).[7]

"The touchstone for analysis of a Rule 34 inspection is reasonableness."   *United States v. Territory of the Virgin Islands*, 280 F.R.D. 232, 235 (D.V.I. 2012) (citing *McConnell v. Canadian Pacific Realty*, 280 F.R.D. 188, 191 (M.D. Pa. 2011)).   The Court may restrict the testing of materials produced under Rule 34 if the burdens or dangers associated outweigh the informational benefits to be gained.   *See, e.g., Hunley v. Glencore Ltd., Inc.*, 2013 U.S. Dist. LEXIS 54259, at

---

the motion in part [ECF 60], seeking to extend the date by which its expert report regarding the shoes must be provided, and to provide plaintiff an opportunity to depose its expert.

[7]        In addition, the Court notes that Rule 26 (a)(2)(B) requires the disclosure of any information that a testifying expert generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions, even if such information is ultimately rejected. FED. R. CIV. P. 26(a)(2)(B)(i)-(iii).   *See Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460, 463 (E.D. Pa. 2005); Adv. Comm. Notes to 2010 Am. ("The disclosure obligation extends to any facts or data considered by the expert in forming the opinions to be expressed, not only those relied upon by the expert."). Parties must disclose "any material considered by the expert, from whatever source, that contains factual ingredients."   Adv. Comm. Notes to 2010 Am..   These disclosure obligations may provide an additional basis to support a requesting party's right to access to evidence.

*6, 21-22 (E.D. Tenn. Apr. 17, 2013) (quashing testing on the grounds that it would cause significant prejudice but yield information of only "marginal relevance"); *see also* FED. R. CIV. P. 26(b)(1)(C). The decision whether to allow testing "rests within the sound discretion of the court." *Ostrander v. Cone Mills, Inc*., 119 F.R.D. 417, 419 (D. Minn. 1988).

With respect to the timing of inspection and testing, a court must consider whether the timing of the request itself might prejudice the opposing party or might otherwise be unreasonable. *Ramos v. Carter Express Inc.*, 292 F.R.D. 406, 408-09 (S.D. Tex. 2013) (the court considered whether the request was made too close to the discovery deadline and was potentially prejudicial to the producing party, but found that "the truth seeking function of the court outweighs the need for the speedy resolution of [the] dispute").

The determination whether a proposed manner of testing is reasonable may turn on whether destructive or non-destructive testing is sought, because a different analysis is employed in each case. *Ramos*, 292 F.R.D. at 408. When the parties differ as to whether non-destructive testing should proceed, "the court must balance the respective interests by weighing the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection." *Id*. (relying on *Hunley,* 2013 U.S. Dist. LEXIS 54259, at *7) (internal quotation marks omitted). To perform this balancing test, some details as to the type of testing must be provided. *See*, *e.g.*, *Holliday v. Extex*, 237 F.R.D. 425, 426 (D. Haw. 2006) (the requesting party proposed visual inspection and the producing party offered to make available any scientific equipment needed for non-destructive testing); *Diepenhorst v. City of Battle Creek*, 2006 WL 1851243, at *2 (W.D. Mich. June 30, 2006) (the requesting party sought to use the "mirror image method" to "clone" the hard drive in issue); *Poyer v. Wegman's*, 242 A.D.2d 843 (N.Y. App. Div.

*Siclari v. CBI Acquisitions, LLC*
Civil No. 2015-28
Page 5

1997) (the testing to be performed included "measurement and visual examination" of the "fragile

glass evidence," as well as photography).

      Generally, courts allow parties to perform non-destructive testing outside the presence and

scrutiny of opposing counsel, absent some sufficiently countervailing consideration.   *See Ramos*,

292 F.R.D. at 409-10 (surveying cases and finding courts "habitually refuse to allow the presence

of an opposing party" to observe non-destructive testing); *Diepenhorst*, 2006 WL 1851243, at *1-

2 (observation of testing or inspection by opposing counsel unreasonable for non-destructive

testing absent special circumstances); *accord Poyner*, 242 A.D.2d. at 843 (finding special

circumstances allowing producing party to attend the testing of "fragile glass evidence" to "ensure

its integrity")   "In the absence of [special] circumstances, however, the balance of hardships

usually tips in favor of allowing the examiner to work in peace." *Diepenhorst*, 2006 WL 1851243,

at *1.

      The Court must also determine whether the proposed location of production and testing is

reasonable, balancing the producing party's concerns against the requesting party's right to

inspect.   *See, e.g., Holliday*, 237 F.R.D., at 427 (finding unreasonable the requesting party's

proposal that the producing party ship helicopter engine parts to the requesting party, and ordering

the producing party to make the parts available at its location); *Superior Comm. v. Earhugger,

Inc.*, 257 F.R.D. 215, 220 (C.D. Cal. 2009) (noting the general rule that large document productions

will occur at the place where the records are kept); *see also Williams v. Taser Intern., Inc.*, 2006

WL 1835437, at *6 (N.D. Ga. 2006) (finding that where voluminous documents were requested,

it was reasonable to produce them where kept and have the requesting party bear the cost of travel

to inspect, or to copy and ship them).

*Siclari v. CBI Acquisitions, LLC*
Civil No. 2015-28
Page 6

With respect to the location for non-destructive testing, a court may require a producing party to send evidence to a facility of an examining party's choice.   *Ramos*, 292 F.R.D. at 410. In some instances, however, a court may require the examining party to provide a reason for requesting that the evidence be sent for testing in a different location.   *Id.* at 410-11 (requiring defendants to provide "compelling reasons" why non-destructive testing should not occur in the state where the evidence was located).   In determining whether to require the evidence to be sent to the examining party, among the factors to be considered are (1) the reasons for the examining party's request, (2) the complexity of the testing and (3) whether adequate safeguards are in place to prevent loss or damage to the evidence being transported.   *See, e.g., Lopez v. Cooper Tire & Rubber Co.*, 2011 U.S. Dist. LEXIS 80695 (M.D. Fla. July 25, 2011) (considering defendant's expert's facilities and the availability of or need for specialized equipment and laboratory facilities, taking into account the proffered procedures or safeguards).   The danger of spoliation and the potential prejudice to the producing party should also be considered, as should remedies in the event of a loss.   *See, e.g., Griffith v. Mellon Bank, N.A.*, 173 F. App'x 131, 135 (3d Cir. 2006) (observing that a producing party can seek a spoliation inference and sanctions if appropriate in the event of loss); *accord Adams v. Thyssenkrupp Safeway, Inc*. 2010 U.S. Dist. LEXIS 84599, at *11-13 (E.D. Cal. July 19, 2010) (noting the "particularized prejudice if the [evidence] were lost, damaged, destroyed, or otherwise materially altered while being transported out of state by defendant," and finding that plaintiff could request "the court impose evidentiary sanctions for the destruction or spoliation of evidence"); *see also Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994) (discussing factors for determining whether a spoliation inference should be granted).

*Siclari v. CBI Acquisitions, LLC*
Civil No. 2015-28
Page 7

## III.   DISCUSSION

Caneel seeks production of the shoes at its expert's office in Virginia so that DeLonga can inspect and conduct non-destructive testing on them.   Caneel does not describe the proposed inspection or testing.   Caneel contends that Federal Rule of Civil Procedure 34(a)(1)(B) compels the conclusion that it is entitled to the inspection and testing.   Def.'s Mem. [ECF 62] at 4-5.

Siclari resists the motion on several grounds.   First, she contends that Caneel never served her with a request under Rule 34, to which she would have been able to interpose an objection. Second, plaintiff claims Caneel failed to comply with Local Rule 37.1 and engage in good faith efforts to confer on the specifics of and protocol for the testing.[8]   Third, Siclari is concerned that, given the "fragile" nature of the evidence, requiring it to be removed from Poczynok's control may lead to its damage or loss.   Pl.'s Opp'n at 2, 7-8.   She argues Caneel has not considered the "middle ground" of having its expert examine the shoes in Illinois under the supervision of Siclari's expert.   *Id*. at 2.   The Court will deal with each point in turn.

Initially, the Court observes that while Caneel relies on Federal Rule of Civil Procedure 34 to support its claim to a right of inspection, Caneel does not identify where it made any request under Rule 34.   Nevertheless, Siclari does not dispute that "Defendant's experts can look at the shoes, measure the shoes and take photographs of the shoes."   Pl.'s Opp'n at 6.   And certainly plaintiff has had – and is taking advantage of – the opportunity to express all of her objections regarding the proposed inspection and testing.   As a result, the lack of a formal Rule 34 request is

---

[8]      Plaintiff characterizes Caneel's request for exclusive possession of the shoes without a detailed explanation of what it intends to do with them as "suspect," and raising "serious concerns as to Defendant's intention."   Pl.'s Opp'n [ECF 64] at 1, 5.   The Court considers the suggestion of a nefarious intent to alter or destroy evidence has no place here, absent concrete evidence to support it.

*Siclari v. CBI Acquisitions, LLC*
Civil No. 2015-28
Page 8

not fatal to Caneel's position.

Similarly, while it is not clear that the precise requirements of Local Rule 37.1 were met here, it is evident that the parties engaged in discussion about the production of the shoes over at least a several-month-long period. Plaintiff acknowledges that the parties had "informal discussions" about the issue and plaintiff agreed that the shoes could be examined in Illinois, under the supervision of plaintiff's expert. Pl.'s Opp'n at 5. That Caneel was not persuaded to accept those terms does not mean that the parties did not at least engage in some dialogue aimed at resolving the dispute.

The Court finds that the real issue here is whether the defendant may compel the plaintiff to give up possession of the shoes for some period, in light of Siclari's contentions that the evidence is (1) central to her case, (2) fragile, and (3) subject to loss or damage. These concerns encompass the questions of whether the items can be safely shipped, how they will be inspected and tested, whether the defendant's expert must be supervised during his inspection, and what remedies there may be in the event of damage.

As noted, the Court must "weigh the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection." *Ramos*, 292 F.R.D. at 408. The Court has no problem finding that the proposed inspection may aid in the search for truth. Siclari argues, with the aid of her experts' opinions, that the condition of the tip of the heel on her left shoe is key evidence in her theory of causation. There is no question, and plaintiff does not dispute, that Caneel's experts must also be permitted to examine the shoe.

With respect to the burdens and dangers posed by the inspection, the Court first notes that the analysis is made virtually impossible by the lack of any description of the proposed inspection

*Siclari v. CBI Acquisitions, LLC*
Civil No. 2015-28
Page 9

and testing.   At a minimum, Caneel must explain the "manner" in which it plans to inspect and test, so that the parties can be assured that all precautions necessary are taken to preserve the evidence in its current state.   While "non-destructive testing" would seem to encompass measurement, visual exam, and possibly photography, to the extent anything more that may affect the condition of the shoes is contemplated, it should be disclosed in advance.   And, along with the majority of courts that have considered this issue, this Court finds that DeLonga should be allowed to examine the shoes outside the presence of plaintiff's expert or other representative.

Based upon the authorities discussed, the location of the inspection will in part turn on whether sufficient safeguards may be put in place to protect the items in transit against loss or damage.   While the plaintiff describes the shoe as in a "fragile" state, this description is without elaboration or support in the record.   As Caneel points out, the shoe has made it from the site of the incident in the Virgin Islands and through several states, to ultimately end up in the hands of Poczynok in Illinois.[9]  Moreover, if Siclari intends to offer the shoe at trial, it will have to be transported back to the Virgin Islands at that time.   The Court believes that proper packaging and tracked shipping should be adequate to assure that damage does not occur in transit.   This, of course, would be at Caneel's expense.

And with respect to alteration, Poczynok can certainly document photographically or by video the condition of the shoes before and after transit and inspection.   If any alteration or damage does occur, Caneel would bear the consequences of such a changed condition.

The Court notes also that Poczynok took detailed photographs of the condition of the subject shoe's heel, and such could be offered at trial to support his opinions, if damage or loss

---

[9]      If such travel has altered the shoe already, then Poczynok's opinion may be undermined.

*Siclari v. CBI Acquisitions, LLC*
Civil No. 2015-28
Page 10

does occur.   While this may not be ideal, the balance of the factors discussed weighs in favor of

allowing the defendant the same access to key evidence enjoyed by plaintiff.

## IV.    CONCLUSION

For the forgoing reasons, the Court will grant the motion for discovery.   This will in turn

necessitate a modification of the schedule.   The premises considered, it is hereby ORDERED:

(1)   No later than November 14, 2016, defendant shall provide to plaintiff a description of the inspection and non-destructive testing Dr. DeLonga intends to undertake.

(2)     No later than November 18, 2016, plaintiff shall deliver both the shoes plaintiff was wearing at the time of the subject incident and the unworn exemplar pair to Dr. DeLonga in Virginia.   Plaintiff shall select the carrier and oversee the packing of the items, and all aspects of the shipping to and from Virginia shall be at Caneel's expense.

(3)     While the shoes are in Dr. DeLonga's possession, access to them shall be strictly controlled and documented.   Neither Dr. DeLonga nor anyone on his staff may alter the condition of the shoes in any way.

(4)     Caneel shall return the shoes to Poczynok's facility in Illinois, using the same shipping method and at its cost, no later than 10 days after receipt of the shoes.   No later than December 1, 2016, Dr. DeLonga shall issue his report and Caneel shall serve it on plaintiff.

(5)     Caneel shall make Dr. DeLonga available for deposition by plaintiff within 21 days after the service of his report on plaintiff.

(6)     The parties shall file dispositive and *Daubert* motions no later than January 15, 2017.  No extensions to the briefing schedule provided in the rules shall be permitted.

(7)     The parties shall file their proposed joint final pretrial order no later than April 4, 2017.

(8)     The parties shall file their proposed voir dire, proposed joint neutral statement, proposed jury instructions no later than April 10, 2017.

(9)     The parties shall file a trial brief or memorandum pursuant to Local Rule 16.1(c) no later than April 11, 2017.

(10)     The final pretrial conference in this matter shall begin promptly at **2:00 p.m. on April 6, 2017**.

*Siclari v. CBI Acquisitions, LLC*
Civil No. 2015-28
Page 11


    (11)    The trial of this matter is scheduled to begin promptly at **9:00 a.m. on April 17, 2017.**  The trial period extends from **April 17, 2017** to **April 28, 2017**.  To the extent that there are conflicts, the trial date may change to any date within this period.   All parties, witnesses and counsel should arrange their schedules accordingly


Dated:  November 9, 2016          S\_____
                                         **RUTH MILLER**
                                         United States Magistrate Judge